Filed 3/4/24  P. v. Koback CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079309 |
| v. | (Super.Ct.No. RIF1506598) |
| BRIAN KEITH KOBACK, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.

Affirmed in part; reversed in part.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, Paige Hazard and Minh U. Le, Deputy Attorney Generals, for Plaintiff and Respondent.

1

In November 2015, defendant and appellant Brian Keith Koback walked into a rental car company office, grabbed a set of car keys from the front desk, and walked out. When he was confronted outside the agency by several employees, he held the keys in his hand with the ignition end sticking out between his knuckles. He lunged at two employees of the rental car agency and then ran off. He was apprehended by law enforcement and was arrested after he engaged in a scuffle with deputies. Defendant was convicted of assault with a deadly weapon other than a firearm, robbery and resisting arrest. He was also found to have suffered one prior serious and violent felony conviction.

Defendant filed an appeal and this court affirmed his conviction. The Supreme Court granted review, vacated our decision and transferred the matter back to this court. We affirmed defendant's conviction in *People v. Koback* (2019) 36 Cal.App.5th 912 (*Koback*) but remanded the matter to the trial court to consider whether concurrent sentences on both his assault with a deadly weapon and resisting arrest conviction was appropriate. Subsequently, the California Department of Corrections and Rehabilitation (CDCR) filed a letter in the trial court recommending that defendant be resentenced under former Penal Code[1] section 1170, subdivision (d)(1). Defendant was resentenced by the trial court to a term of 13 years.

Defendant now contends on appeal that, (1) the trial court erred by failing to apply section 1385, subdivision (c), when exercising its discretion to impose the five-year prior

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

serious felony conviction enhancement; (2) the trial court failed to apply the current version of section 1170 when selecting the determinate term at resentencing; (3) the trial court erred by imposing consecutive sentences on the robbery and assault with a deadly weapon counts; (4) the minute order must be amended to reflect that he only admitted having suffered one prior felony conviction; and (5) the trial court must calculate the actual presentence custody credit earned from the time of the original sentencing and the resentencing.[2]  In a supplemental opening brief, defendant argues that remand for a new sentencing hearing is required based on the amendments to section 1172.1 related to the discretion of the trial court to recall and resentence effective January 1, 2024.  The People concede that the matter should be remanded for the trial court to reconsider whether the robbery and assault with a deadly weapon convictions should be sentenced concurrently, and to recalculate his actual custody credits.

## FACTUAL AND PROCEDURAL HISTORY[3]

A.    FACTUAL HISTORY

"On November 6, 2015, defendant walked into a rental car company office, grabbed a set of car keys from the front desk, and walked out.  Chase, an employee who was manning the front desk, learned what had happened from a customer and followed

---

[2]  In his opening brief, defendant raised a claim that the matter should be remanded for a hearing on whether he should be placed in the mental health diversion program pursuant to section 1001.36.  After reviewing the respondent's brief, defendant withdrew the claim.

[3]  The factual and procedural histories are taken from *Koback*, *supra*, 36 Cal.App.5th 912.

defendant into the parking lot. Chase told defendant to stop, and said, 'Please give me the keys.' Defendant kept walking away, pretended not to know anything about the keys, and reached into the pocket of his sweatpants. Fearing defendant might be armed, Chase backed off and enlisted the help of two other employees who happened to be nearby, Agustin and Arthur. The three employees formed a wide circle around defendant to prevent him from leaving.

"Chase and Agustin noticed one of the keys was hanging out of defendant's pocket, and they demanded defendant return the keys. Defendant stopped and stood facing Agustin and Arthur from about two feet away. Chase backed off and stood about five feet behind defendant. Defendant appeared to be getting angry. Defendant again reached into his pocket, 'like he was going to go for something.' Defendant told the men to 'back up' or 'move,' or he would 'fuck' them up. He then began to walk away across the street. The employees then got into Arthur's car and followed defendant into a motel parking lot across the street.

"The three men stood around defendant in the motel parking lot and again demanded that defendant return the car keys. Chase testified defendant stood '[a]bout a foot from arm's reach' away from the three men, but Agustin was closest to defendant. Agustin testified defendant stood two to three feet away from him and was within arm's reach. Defendant asked, 'You want the keys?' He then took the car keys from his pocket, made a tight fist, and held one of the keys with the 'sharp' or ignition end of the key sticking out between his knuckles. Defendant then 'charged,' 'came at,' or 'lunged' at Agustin and 'swung' or 'swiped' the key at Agustin's torso. Arthur described

4

defendant's motion like 'throwing a punch.'  Agustin testified he was nervous and afraid he might get hurt because defendant swung the key at him 'with force.'  Chase testified he did not believe defendant was close enough to Agustin to actually make contact.  But Agustin testified he was not hit 'because my nephew [i.e., Arthur] pulled me back.'  Arthur testified, 'If I didn't move [Agustin], he probably would have got hit.'  The three men backed away from defendant.

"Defendant then put the keys back into his pocket, took off, and scaled the wall behind the motel.  The employees got back into the car and found defendant as he walked along one of the streets behind the motel.  They followed defendant by car through a small area of shops and streets for about 40 minutes, until law enforcement arrived and took over the pursuit.  Several deputies chased down and subdued defendant.  Defendant resisted, and three deputies were injured in the process.

Defendant testified he found the car keys next to a bus stop.  Defendant ran from the police because he feared for his life.  He denied taking the car keys from the rental car company office, denied resisting arrest, and denied that he swung the keys at Agustin."  (*Koback*, *supra*, 36 Cal.App.4th at pp. 917-918, fns. omitted.)

B.    PROCEDURAL HISTORY

Defendant was found guilty of assault with a deadly weapon other than a firearm, to wit, a key (§ 245, subd. (a)(1); count 1); robbery (§ 211; count 2); and (3) resisting arrest (§ 69; count 3).  Defendant admitted he had suffered one prior conviction for which

5

he served a prison term (§ 667.5, subd. (b));[4] and that he had suffered one prior serious and violent felony conviction (§§ 667, subds. (a), (c), (e)(1), 1170.12, subd. (c)(1)). (*Koback*, *supra*, 36 Cal.App.5th at p. 916.)  Defendant was sentenced to 14 years and four months in state prison as follows:  on count 2, the principal term, he was sentenced to the middle term of three years, doubled pursuant to the one strike law, for a term of six years; on count 1, he was sentenced to one-third the middle term of three years, doubled pursuant to the one strike law, for a total term of two years to be served consecutively to count 2; and on count 3, he was sentenced to one-third the middle term of two years, doubled pursuant to the one-strike law, for a term of one year and four months, to be served consecutively to count 2.  In addition, the trial court imposed a five-year consecutive sentence for the prior serious felony conviction.  (*Id.* at pp. 916, 927)

After we affirmed defendant's conviction on appeal, the Supreme Court issued an order filed on March 27, 2019, S250870, returning the matter to this court with directions to vacate our decision and reconsider it in light of *In re B.M.* (2018) 6 Cal.5th 528.[5]  In *Koback*, we once again affirmed defendant's conviction but remanded to the trial court in order for it to consider imposing concurrent sentences on counts 1 and 3.  We also directed the superior court to accurately reflect in the minute order and abstract of

---

[4] Defendant was charged with having served two prior prison terms within the meaning of section 667.5, subdivision (b), but he only admitted to having suffered one prior conviction.  (*Koback*, *supra*, 36 Cal.App.5th at pp. 928-930.)

[5] The Supreme Court in *In re B.M.*, *supra*, 6 Cal.5th 528, clarified the law on assault with a deadly weapon when the weapon used is not inherently deadly.  (*Id.* at pp. 533-538.)

judgment upon resentencing that defendant only admitted to having suffered one prior serious and violent felony conviction. (*Koback*, at pp. 928, 930.) After the remittitur issued, the resentencing was continued several times.

On November 1, 2021, the CDCR sent a letter to the trial court recommending that defendant be resentenced pursuant to former section 1170, subdivision (d)(1), now section 1172.1.[6] The CDCR provided a cumulative history and evaluation. It outlined all of defendant's prior juvenile and adult criminal history. It stated that the current offense did not include violent acts against persons. His parole and probation history were also included. He had four rules violations since being incarcerated, including battery on a prisoner, resisting staff, use of a controlled substance and possession of contraband. He was doing well in a vocational welding program. The CDCR recommended that the trial court consider striking the five-year enhancement imposed pursuant to section 667, subdivision (a), which at the time of the original sentencing had to be mandatorily imposed.

C.    RESENTENCING

Defense counsel filed a memorandum in support of resentencing which was sealed. Counsel requested that the trial court reconsider defendant's sentence and strike the prior serious felony conviction enhancement. Counsel requested that the trial court consider defendant's record of rehabilitation and trauma he suffered as a child. He requested that counts 1, 2 and 3 be run concurrent. Counsel provided that defendant's

_____

[6] Section 1172.1 provides for the recall and resentencing of a defendant under new sentencing laws.

7

mother abandoned his family when he was 13 years old. Defendant immediately began to perform poorly in school and had trouble with law enforcement. He began using methamphetamine and marijuana. He was diagnosed with bipolar disorder and depression in 2007 when he was 17 years old. He was given medication. When he was released from custody at the age of 23, he no longer took his medication. Except for the rules violations while incarcerated, he was doing well taking vocational welding classes and in his work assignments. Counsel described the rules violations at the CDCR and alleged they were all connected to his untreated mental illness. Counsel requested that the trial court impose the low term on count 2, and concurrent sentences on counts 1 and 2. Attached to the resentencing brief were defendant's probation and CDCR records.

The People filed a resentencing memorandum. They requested that defendant be sentenced to the original sentence of 14 years and 4 months in state prison. Defendant's crimes did not warrant concurrent sentences. Defendant had several prior offenses that he committed before the current offense and had rule violations in prison. Finally, defendant would pose "an unreasonable risk of danger to public safety" if he was released. Defendant was not entitled to resentencing based on his criminal record and his conduct in prison.

The resentencing hearing was conducted on May 10, 2022. The trial court first addressed the letter from the CDCR. It was concerned that the CDCR characterized the current offense as not involving violent acts against persons; this was incorrect. The charges on their face and the underlying conduct of defendant—kicking a responding deputy in the face—were violent acts. Further, the letter from the CDCR showed that

8

defendant had committed four rules violations while incarcerated. The trial court found that there was nothing that showed it "something" warranting relief since defendant had been incarcerated. The trial court noted that defendant had lost one of his parents as a juvenile but that did not necessarily mean he could not lead a productive life.

Defendant's counsel argued that the rules violations occurred prior to defendant receiving mental health treatment. When he was taking his medication, he was doing well in prison. Further, defendant was doing well in his life up until he was 12 or 13 years old. After this, his mother left him and he started to get into trouble. Defendant never received treatment between the ages of 12 and 16 to deal with the abandonment by his mother. The trial court noted that the juvenile justice system provided the most comprehensive mental health treatment in 2000 when defendant was getting into trouble. Defendant's counsel contended that defendant was not receiving counseling or treatment between the ages of 12 and 16. This contributed to him committing crimes. The juvenile court disagreed, finding that defendant had been in placements, which had provided treatment, up until he was 23 years old. Defendant's counsel stated that when defendant was 23 years old, he stopped taking medication. However, since he was back in custody, he was receiving treatment and was taking his medication. He was able to deal with his issues of abandonment. Under section 1172.1, the trial court had to take into account defendant's "traumatic youth" and how he performed in prison.

The trial court asked about the wording of the remittitur as to counts 1, 2 and 3, and whether they must be run consecutively pursuant to section 1170.12. Defendant's counsel stated that the remittitur did not address counts 1 and 2; only count 3. Defense

9

counsel requested that the trial court strike the prior conviction and sentence counts 1, 2 and 3 concurrently.

The trial court stated, "I think right now what we're st[]uck with—when I say 'stuck with'—I can't sentence him more than mid term Count 1. That's all I have is mid term doubled for the strike on Count 1. I can't go higher than what it originally was because I'm prohibited of doing that for policy reasons and statutory reasons, but there's no way you can sentence higher than mid term because the current de facto is mid term, unless I heard abating circumstances—approved, and it doesn't appear they were." The trial court then clarified it was referring to count 2. The trial court also noted that since defendant was entitled to resentencing, he was to be sentenced based on recent law.

The trial court stated it had read the CDCR letter, the People's brief and defendant's brief. Defendant's resentencing brief included numerous exhibits pertaining to his juvenile file and reports from the CDCR. The trial court reviewed defendant's juvenile history. He was incarcerated in the California Youth Authority until he was 23 years old. Defendant's criminal history as an adult spanned from 2008 to 2015, with numerous priors, and the prior serious and violent felony conviction, which was an attempted carjacking. Further, defendant was on parole when he committed the current offenses. The trial court also took into account the rule violations while in prison. Further, the trial court noted that although defendant had only one parent, his father was very supportive.

The trial court found that the middle term for count 2, the principal term, was appropriate. "I do not find this to be a mitigating case. I do find this to be an aggravating

case for robbery." The fact defendant was on parole and committed robbery was aggravating but the trial court chose to impose the middle term. He never took an opportunity to de-escalate. Once he took the keys, he ran or engaged in assaultive behavior to get away, but when I say that it neither is aggravating or mitigating—it's simply a robbery." Second, the trial court took into account the prior event, which was a carjacking. The third factor was defendant's prospects. "His record is horrible. He committed numerous and continuous additional offenses. He was still on parole for a 211, or rather the carjacking, at the time of the incident offense." As for his postconviction conduct, "It is not horrible, but it is not good in the way I think that it mitigates his status as a recidivist." The trial court refused to strike the prior conviction.

The trial court sentenced defendant to the middle term on count 2 for a total of six years. The trial court noted, "I believe that 1170.12(a)(7) does stand for the proposition that any other serious offense, even in the same fact pattern, if it's not 654 needs to run consecutive." The trial court sentenced defendant to a two-year, consecutive sentence on count 1. The trial court then addressed count 3. It felt that the count involved violence. The People represented that the deputy involved in count 3 suffered a minor concussion and cut. Defendant's counsel contended that it was an accident. The trial court decided to run count 3 concurrent to counts 1 and 2. The trial court also imposed the five-year prior serious felony conviction enhancement. It stated, "On the nickel prior, the Court is mindful of its discretion pursuant to section 1385." Defendant received a total sentence of 13 years. The trial court did not calculate defendant's actual presentence custody credit from the time of the original sentencing and resentencing. On the abstract of

11

judgment, the total credits imposed were 260 actual days and 39 local conduct credits for a total of 299 days, which was the calculation at the time of the original sentencing.

## DISCUSSION

A.    <u>FAILURE TO STRIKE THE FIVE-YEAR ENHANCEMENT PURSUANT TO SECTION 1385, SUBDIVISION (C)</u>

Defendant contends the trial court erred at resentencing by failing to properly apply section 1385, subdivision (c) and strike his prior serious felony conviction.

"Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) amended section 1385 to include subdivision (c). [Citation.] Section 1385(c)(1) provides that '[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.' [Citation.] Section 1385(c)(2) provides as follows: 'In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. "Endanger public safety" means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.) These mitigating circumstances include whether the current offense is connected to mental illness (§ 1385, subd. (c)(2)(D)); connected to prior

12

victimization or childhood trauma (§ 1385, subd. (c)(2)(E)); or "the enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(H)).

"[W]e review for abuse of discretion the trial court's decision not to strike a sentence enhancement under section 1385." (*People v. Mendoza*, *supra*, 88 Cal.App.5th . at p. 298.) "The abuse of discretion standard is highly deferential." (*Ibid.*)

Recently, another appellate court determined that section 1385, subdivision (c), does not apply to prior strike convictions because they do not constitute an enhancement. In *People v. Burke* (2023) 89 Cal.App.5th 237 (*Burke*), the court determined that subdivision (c) of section 1385 "expressly applies to the dismissal of an 'enhancement," and it is well established that "the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Burke*, at p. 243.) It concluded, "The plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement. We therefore conclude that section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law." (*Burke*, at p. 244; see also *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2 [following *Burke*].)

In *Burke*, the appellate court addressed prior strike convictions pursuant to section 667, subdivisions (b), through (i), and 1170.12, subdivisions (d), and (e), but did not address whether section 1385, subdivision (c), applies to a section 667, subdivision (a)(1), serious prior felony conviction under the "Three Strikes" law. (*Burke*, *supra*, 89 Cal.App.5th at pp. 240, 243.) The California Supreme Court has previously found that a section 667, subdivision (a)(1), prior conviction is an enhancement. (*People v. Sassler*

13

(2015) 61 Cal.4th 1, 8-10.) Although prior strike convictions are not enhancements for purposes of section 1385, subdivision (c), a prior serious felony conviction under section 667, subdivision (a)(1), which has been found to be an enhancement, is subject to review for dismissal under section 1385, subdivision (c).

The People contend that defendant has forfeited the issue on appeal by failing to object to the trial court's exercise of its discretion under an erroneous standard. The People insist that if defendant believed that the trial court was not properly considering the factors in section 1385, subdivision (c), it was incumbent upon him to object to the trial court's reasons given for refusing to strike the section 667, subdivision (a)(1), enhancement. In response, defendant contends the issue was not forfeited as the trial court was aware—despite seemingly claiming in his opening brief that the trial court was not aware of the changes to section 1385—that it must apply section 1385, subdivision (c), at the time of resentencing. However, defendant insists that the trial court did not properly apply the changes by failing to give "great weight" to the evidence of the mitigating factors, e.g., his mental illness and the age of the prior conviction. He also claims that the law was in flux at the time of the resentencing as the appellate courts were still interpreting the meaning of the changes to section 1385, which relieved him of his obligation to object to the trial court's exercise of its discretion. Finally, if he is found to have forfeited his claim, he received ineffective assistance of counsel.

Rather than address each of the issues regarding forfeiture, we will briefly address the merits as we presume on this record that the trial court properly exercised its discretion. " 'Defendants are entitled to sentencing decisions made in the exercise of the

"informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) A remand for resentencing is not required "if the record demonstrates the trial court was aware of its sentencing discretion" or "if the record is silent concerning whether the trial court misunderstood its sentencing discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228-1229.)

The trial court, in refusing to strike the section 667, subdivision (a)(1), nickel prior, stated that it was aware of its discretion under section 1385. We must presume on this record that the trial court was aware of the addition of section 1385, subdivision (c).

The record supports that the trial court properly exercised its discretion pursuant to section 1385, subdivision (c). The trial court engaged in extensive discussions with both counsel as to defendant's mental health history and childhood trauma. The trial court stated that defendant had received treatment while in placements up until the age of 23 and that officials at the state prison were "dubious" as to whether his rule violations were based on his failure to take medication. The trial court also found that defendant had a supportive father. The record supports that the trial court concluded the factors of mental illness and childhood trauma had not been the cause of defendant's commission of his crimes.

The trial court was aware that the prior conviction was over five years old as it noted that the prior crime was committed on August 28, 2011. Even though the nickel

15

prior was over five years old, which is a mitigating factor under section 1385, subdivision (c)(2)(H), the trial court implied that defendant's release would pose a danger to society based on his extensive criminal record, rule violations in prison and his failure to articulate a plan should he reenter society. The trial court characterized defendant as a recidivist. It also reviewed his extensive record and rule violations in prison The trial court also was not convinced that defendant had a solid plan should he be released from custody, which implies it was concerned that defendant would pose a danger to society if released. The record supports that the trial court impliedly determined that despite the prior conviction being over five years old, dismissal was not warranted based on the danger that defendant posed to society should he be released.

Moreover, we note that in *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093, review granted April 12, 2023, S278894 (*Ortiz*)[7] the court held that "the specification of mandatory factors did not displace the trial court's obligation to exercise discretion in

---

[7] We note that the California Supreme Court is currently reviewing *Ortiz* and *People v. Walker* (2022) 86 Cal.App.5th 386, 395, review granted March 22, 2023, S278309, to determine the proper review standard for section 1385, subdivisions (c)(1) and (c)(2). In *Walker*, the court found that section 1385's "use of the additional phrase 'great weight' . . . erects a presumption in favor of the dismissal of the enhancement unless and until the court finds that the dismissal would 'endanger public safety.' " (*Walker*, at p. 398.) In *Ortiz*, as stated, the court found that, "The plain language of section 1385[, subdivision ](c)(2) contemplates the trial court's exercise of sentencing discretion, even as it mandates that the court give 'great weight' to evidence of enumerated factors." (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1096.) The question before the high court is "Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*People v. Walker*, 2023 Cal.LEXIS 1459, *1.) This court believes that *Ortiz* is better reasoned.

16

assessing whether dismissal is 'in furtherance of justice.' " It further noted that the trial court is not precluded from "determining that countervailing factors—other than the likelihood of physical or other serious danger to others—may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." (*Id.* at p. 1098.) Hence, even if the record here did not support that the trial court found that defendant posed an unreasonable danger to public society if released, it could refuse to dismiss the section 667, subdivision (a)(1), prior in the furtherance of justice. (*Ortiz*, at pp. 1098-1099.) The trial court found that defendant's criminal record was extensive, he committed his crimes while on probation or parole, he had rule violations in prison and did not have a concrete plan should he be released. The trial court properly exercised its discretion pursuant to section 1385, subdivision (c).[8]

### B.    DETERMINATE SENTENCING TERM

Defendant also contends the trial court applied an incorrect legal standard when selecting the determinate term on count 2. He insists the trial court failed to apply the test required by section 1170, subdivisions (b)(6) and (b)(7). Remand for resentencing is required.

---

[8] Defendant further argues that the trial court could not consider the factors in *Williams* in refusing to strike the section 667, subdivision (a)(1), prior conviction. As noted, the trial court in denying the request to strike the section 667, subdivision (a)(1), prior stated it was aware of its discretion under section 1385. Moreover, in *Ortiz*, the court concluded that consideration of the *Romero/Williams* factors was not improper. (*Ortiz, supra*, 87 Cal.App.5th at pp. 1098-1099.)

Section 1170 limits the trial court's ability to impose an upper-term determinate sentence by making the middle term the presumptive prison term unless specified circumstances exist. (§ 1170, subd. (b)(1).)[9] A trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

"Section 1170, subdivision (b)(6), created a presumption in favor of the lower term if a defendant's psychological, physical, or childhood trauma contributed to the commission of the offense. [Citation.] Section 1170, subdivision (b)(6) does not require the court to impose the lower term because of defendant's mental illness, but for psychological trauma. While at least one court has concluded 'psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6),' that court also emphasized that mental illness alone did not qualify for the lower term presumption." (*People v. Tilley* (2023) 92 Cal.App.5th 772, 777-778.) Subdivision (b)(7) of section 1170 provides, "Paragraph (6) does not

---

[9] Senate Bill No. 567, effective January 1, 2022, codified in section 1170 the changes of presumptions as to the middle and lower terms. Section 1170 was amended again effective January 1, 2023. (Stats.2022, c. 744 (A.B. 960), § 1, eff. Jan. 1, 2023.) Such amendment does not make substantive changes in the statute relevant to the issues in this appeal and we will refer to section 1170 as it currently reads.

preclude the court from imposing the lower term even if there is no evidence of those circumstances listed in paragraph (6) present."

As noted, the trial court stated as to count 2 that it could not impose a sentence higher than the middle term that was already imposed. It then stated, "the current de facto is mid term, unless I heard abating circumstances—approved, and it doesn't appear they were." Defendant did not object to the trial court's statement the middle term was the "de facto." Defendant was sentenced in May 2022, which was five months after section 1170 was amended. (*People v. Tilley*, *supra*, 92 Cal.App.5th at p. 777.) The absence of a specific objection based on the trial court failing to apply section 1170, subdivisions (b)(6) and (b)(7) forfeits the issue on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351; *Tilley*, at p. 778.)

Defendant insists that the issue was preserved due to his requesting the low term on count 2 and by asking the trial court to consider his childhood trauma when sentencing. He also claims that he received ineffective assistance of counsel if he is found to have forfeited his claim.

Initially, we do not consider arguments made for the first time in the reply brief. (*People v. Duff* (2014) 58 Cal.4th 527, 550 fn. 9.) We will not consider defendant's claim that he received ineffective assistance of counsel raised for the first time in the reply brief. Additionally, such argument is not sufficient to raise the claim of ineffective assistance of counsel as defendant has failed to provide detailed argument as to whether there was a reasonable probability that he would prevail despite the failure to object. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 414 ["A defendant claiming ineffective

19

assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome"].)

It was incumbent upon defendant to object to the imposition of the middle term if he felt the trial court was misapplying the law. Such failure forfeits the issue on appeal.

C.      CONCURRENT SENTENCING ON COUNTS 1 AND 2

Defendant contends the trial court erroneously believed that this court was silent in *Koback* as to whether the trial court had authority to impose a concurrent sentence on count 1. The trial court believed that section 1170.12, subdivision (a)(7), required a consecutive sentence on count 1 as it was a serious and/or violent conviction. The People agree that remand is necessary in order for the trial court to consider running the sentence on count 1 concurrent to the sentence on count 2.

Section 1170.12, which applies to aggregate and consecutive terms for multiple convictions when the Three Strikes scheme applies." (*People v. Henderson* (2022) 14 Cal.5th 34, 45.) Section 1170.12, subdivision (a)(6), provides that, "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to this section." Subdivision (a)(7) provides, "If there is a current conviction for more than one serious or violent felony as described in subdivision (b), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

20

In our prior opinion, this court specifically remanded the matter so that the trial court could consider running the sentence on count 1 concurrent to the sentence on count 2, if it found the two offenses arose on the same occasion and from the same set of operative facts, citing to section 1170.12, subdivision (a)(6). (*Koback*, *supra*, 36 Cal.App.4th at pp. 926-928.) After this court issued its opinion, and after the resentencing by the trial court, the Supreme Court clarified the interaction between section 1170.12, subdivisions (a)(6) and (a)(7), finding that the trial court retained its discretion to sentence qualifying offenses concurrently. (*People v. Henderson*, *supra*, 14 Cal.5th at pp. 49-52, 56.) Based on the record, it appears the trial court believed it was mandated to impose consecutive sentences pursuant to section 1170.12, subdivision (a)(7). It did not appear to consider whether the robbery and assault with a deadly weapon were committed on the same occasion or arose from the same set of operative facts. As such, remand is necessary in order for the trial court to properly exercise its discretion in choosing whether to impose concurrent sentences on counts 1 and 2.

D.       RECALL AND RESENTENCING PURSUANT TO SECTION 1172.1

Defendant insists the trial court erred when it determined that he was not entitled to recall of his sentence and resentenced him solely on the remittitur. He further contends that several changes were made to section 1172.1 effective January 1, 2024, which would impact the trial court's determination on recalling his sentence. The People counter that the trial court did consider former section 1170.03, which was renumbered to section 1172.1, when it resentenced defendant, and even if the amendments to section 1172.1 are applicable to defendant, the trial court would not reach a different conclusion.

21

"Prior to January 1, 2022, section 1170, former subdivision (d)(1) . . . 'authorize[d] the Secretary of the CDCR to recommend to the superior court that the court recall a previously imposed sentence and resentence the defendant. [Citation.] The CDCR recommendation furnishe[d] the court with jurisdiction it would not otherwise have to recall and resentence and [was] "an invitation to the court to exercise its equitable jurisdiction." ' " (*People v. Braggs* (2022) 85 Cal.App.5th 809, 817, fn. omitted.) " 'Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, §§ 1-7) (Assembly Bill 1540) came into effect on January 1, 2022, and moved the recall and resentencing provisions of former section 1170(d)(1) to new section 1170.03.' " (*Ibid.*) Defendant was considered for recall of his sentence under former section 1170.03.

"Effective June 30, 2022, '[t]he Legislature . . . renumbered section 1170.03 to section 1172.1, but made no substantive changes.' " (*People v. Braggs*, *supra*, 85 Cal.App.5th at p. 818.) Effective January 2, 2024, Assembly Bill 600 amended section 1172.1. (Stats. 2023, ch. 446, § 2.) "A.B. 600 amended section 1172.1 to allow a trial court, on its own motion, to recall a sentence and resentence a defendant when 'applicable sentencing laws at the time of the original sentencing are subsequently changed by new statutory authority or case law.' " (*People v. Dain* (2024) 99 Cal.App.5th 399, 815.)

Defendant first appears to contend the trial court resentenced him only on the remittitur and did not consider the factors in former section 1170.03. At the resentencing, the trial court stated that if defendant was only before the court to recall his sentence, and not additionally on remand after remittitur, it would choose not to recall defendant's

22

sentence based on his prior record and his postconviction behavior in prison. However, the trial court found that since defendant had to be resentenced, the trial court had to consider all relevant sentencing laws, including section 1170.03. It proceeded to consider defendant's criminal record and postconviction factors. Defendant incorrectly argues that the trial court never considered the factors in section 1170.03.

Defendant additionally contends the matter must be remanded in order for the trial court to reconsider recalling his sentence based on the changes to section 1172.1. Defendant refers to two of the provisions in section 1172.1 that were amended. Section 1172.1 was amended so the trial court can "[v]acate the defendant's conviction and impose judgment on any necessarily included lesser offense or lesser related offense, whether or not that offense was charged in the original pleading, with the concurrence of the defendant, and then resentence the defendant to a reduced term of imprisonment." (§ 1172.1, subd. (a)(3)(B).) Under former section 1170.03, subdivision (3)(B), the trial court could only reduce the judgment if the district attorney agreed to the lesser judgment and sentence. Further, section 1172.1 was amended to mandate that the trial court consider postconviction factors in place of it previously being discretionary. (§ 1172.1, subd. (a)(5).) The People insist that even if the trial court were to consider the amendments in section 1172.1, it would reach the same result.

We need not consider the issue as we are already vacating defendant's sentence. Consequently, the trial court must consider any interim changes in the law in conducting a full resentencing. (*People v. Buyck* (2018) 5 Cal.5th 857, 893 ["[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all

counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances' "].)

E.    CORRECT MINUTE ORDER

Defendant further contends that the minute order from sentencing on July 22, 2016, must be corrected to reflect that he admitted only one prior felony conviction. As noted by the People, this court previously stated that this was an error as the People charged defendant with having suffered two prior felony convictions, but he only admitted to one of them. (*Koback*, *supra*, 36 Cal.App.4th at pp. 928-929.) However, we also concluded that "Because we reverse the sentence and remand for resentencing, we need not direct the minutes and abstract of judgment to be corrected. When defendant is resentenced, we presume the minutes will accurately reflect defendant only admitted one strike prior." (*Id.* at p. 930.) Similarly, here, since we will order that defendant's sentence be vacated and remand to the trial court for resentencing, we assume the minutes from sentencing will accurately reflect defendant's admission to one prior felony conviction.

F.    PRESENTENCE CUSTODY CREDIT

Defendant finally contends the trial court erred by failing to recalculate his actual custody credit at the time of resentencing. We agree with defendant that " 'When . . . an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the actual time the defendant has already served and credit that time against the 'subsequent sentence.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23.) Since the matter is being remanded for resentencing, this court

24

presumes the trial court will calculate the proper actual custody credits after the resentencing.

## DISPOSITION

The sentence is reversed. At resentencing, the trial court must consider whether concurrent sentences on counts 1 and 2 are appropriate pursuant to section 1170.12 subdivision (a)(6). The trial court shall also recalculate the actual custody credits. The trial court shall consider all interim changes to the law upon resentencing. In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.

25